IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-386-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DERRICK LEON FOSTER, | ) | |
| | ) | |
| Defendant. | ) | |

On October 16, 2024, Derrick Leon Foster ("Foster" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 87]. Foster filed several exhibits in support [D.E. 87-1, 87-2, 87-3]. In support, Foster cites: (1) the death of the mother of two of his teenage children; (2) the challenges of his children's maternal grandmother ("maternal grandmother") to care for these two teenage children; (3) Amendment 821 and his criminal history score; (4) an alleged sentencing disparity caused by his inability to be released to a halfway house; (5) his "remarkable personal rehabilitation;" (6) Covid-19's "[h]arsh conditions" that stymie the Bureau of Prison's ("BOP") ability to address his medical needs; (7) the section 3553(a) factors; (8) his release plan; and (9) cumulative factors. See [D.E. 87] 5–25. On August 14, 2026, the United States responded in opposition [D.E. 94]. As explained below, the court denies Foster's motion for compassionate release.

I.

On July 14, 2021, with a written plea agreement, Foster pleaded guilty to conspiracy to distribute and possess 500 grams or more of methamphetamine (count one) and possession with

intent to distribute 50 grams of more of methamphetamine (count two). See [D.E. 43, 45]. On September 28, 2022, the court held Foster's sentencing hearing, resolved Foster's objection in his favor, and otherwise adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 82]; [D.E. 83] 1; PSR [D.E. 53]. The court calculated Foster's total offense level to be 33, his criminal history category to be IV, and his advisory guideline range to be 188 to 235 months' imprisonment. See [D.E. 83] 1. After granting the government's downward departure motion and considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Foster to 132 months' imprisonment on counts one and 132 months' concurrent imprisonment on count two. See [D.E. 82, 83]. Foster did not appeal.

II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Burleigh, 145 F.4th 541, 547 (4th Cir. 2025), abrogated on other grounds by Rutherford v. United States, 146 S. Ct. 1320 (2026); United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020), abrogated on other grounds by Rutherford, 146 S. Ct. 1320. A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing

Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Burleigh, 145 F.4th at 547; Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Reese, No. 25-6373, 2026 WL 2211212 (4th Cir. July 31, 2026) (per curiam) (unpublished) (citation omitted); United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

On July 19, 2024, Foster applied to his warden for compassionate release. See [D.E. 87-1]. Foster's warden did not respond within 30 days. See [D.E. 87] 2–3. The government does not contest exhaustion. See [D.E. 94] 10. Therefore, the court addresses Foster's motion on the merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See United States v. Washington, 161 F.4th 816, 818 (4th Cir. 2025); Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. A circumstance is extraordinary when it is "most unusual, far from common, or having little or no precedent." Rutherford, 146 S. Ct. at 1330 (cleaned up). "Compelling . . . means tending to convince or convert by or as if by forcefulness of evidence." Id. (cleaned up). Thus,

"extraordinary and compelling reasons for compassionate release are those that are especially unusual and convincing." Id.; see also Fernandez v. United States, 146 S. Ct. 1292, 1307 (2026). "That is a demanding standard." Fernandez, 146 S. Ct. at 1302. Moreover, although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024), abrogated on other grounds by Rutherford, 146 S. Ct. 1320; McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See id. § 1B1.13(b), invalidated in part by Rutherford, 146 S. Ct. 1320. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13(e).

Foster seeks compassionate release under section 3582(c)(1)(A) and argues extraordinary and compelling circumstances exist. First, Foster argues that extraordinary and compelling

reasons exist because "(o)n June, 27, 2024, my two children['s] mother was murdered in her driveway in a drive-by shooting." [D.E. 87] 5. Foster claims that this situation caused significant, grief and that his presence will provide stability and "enable the children['s] ability to cope and ensure proper grief resolution." Id. at 10. Foster also notes that the maternal grandmother has "taken (informal) custody" of these two teenage children. Id. at 5. Foster also claims that the maternal grandmother is "70 years old, suffers failing health, and is no longer working so [living] on a limited budget" which leaves "Foster as [the children's] sole provider." Id.; cf. PSR ¶ 40.

Four "family circumstances" might create an extraordinary or compelling reason. See U.S.S.G § 1B1.13(b)(3). The first concerns a "death or incapacitation of the caregiver of a defendant's minor child." Id. § 1B1.13(b)(3)(A). The next two concern the "incapacitation" of either the spouse, registered partner, or parent of the defendant where the defendant is the only available caregiver. See id. § 1B1.13(b)(3)(B)–(C). The fourth is a catch-all provision for "circumstances similar" to the enumerated provisions involving a relation "similar in kind to that of an immediate family member" and where the "defendant is the only available caregiver." Id. § 1B1.13(b)(3)(D).

The PSR shows that Adriana Lewis was the mother of two of Foster's three children. See PSR ¶ 34. Lewis's death does not provide extraordinary or compelling circumstances under the policy statement because Lewis's mother is now caring for the two teenage children. See U.S.S.G. § 1.13(b)(3)(A). Thus, the court determines if the maternal grandmother is incapacitated. See id.

As for the maternal grandmother, Foster claims that she "is 70 years old, in failing health, and is no longer working." [D.E. 87] 5. Under the policy statement, proving incapacitation of a caregiver "require(s) severe impairment of an individual's ability to perform the essential requirements of caring for a minor child." United States v. Rosario-Cruzado, No. 24-6365, 2025

WL 1540932, at *2–3 (4th Cir. May 30, 2025) (unpublished); see United States v. Blevins, No. 1:15-CR-3, 2026 WL 497306, at *1–2 (W.D. Va. Feb. 23, 2026) (unpublished); United States v. Clack, No. 5:20-CR-543, 2024 WL 4954305, at *3 (E.D.N.C. Dec. 3, 2024) (unpublished); United States v. Roueche, No. CR07-344, 2024 WL 4665568, at *4 (W.D. Wash. Nov. 4, 2024) (unpublished); Delavan v. United States, No. 4:18-CR-23, 2024 WL 2958956, at *4 (E.D. Va. June 12, 2024) (unpublished); United States v. Harris, No. 5:15-CR-111, 2021 WL 6052284, at *3 (E.D.N.C. Dec. 20, 2021) (unpublished), appeal dismissed, No. 22-6001, 2022 WL 18228332 (4th Cir. 2022) (unpublished); United States v. Locklear, No. 7:17-CR-60, 2021 WL 5098691, at *4 (E.D.N.C. Nov. 2, 2021) (unpublished); United States v. White, No. CR 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021) (unpublished); United States v. Greene, No. 1:17-CR-12, 2020 WL 4475892, at *5 (D. Me. Aug. 4, 2020) (unpublished). Although Foster claims that the maternal grandmother has multiple health issues and is on a fixed income, Foster does not identify those "health issues" or provide any documentation or other evidence to support these claims. See [D.E. 94] 12. Unsupported claims of "health issues" and financial struggles do not equal incapacitation. See, e.g., Blevins 2026 WL 497306, at *2. Thus, Foster has failed to show that the maternal grandmother is incapacitated.

Alternatively, although the maternal grandmother's alleged unidentified health issues are unfortunate, Foster is not "the only available caregiver" for his children. See PSR ¶ 38. Foster's half-sisters all live in the area and could care for these two teenagers. See id. Therefore, Foster is not the only available caregiver for these children. See, e.g., Blevins, 2026 WL 497306, at *2; United States v. Taylor, No. 3:08-CR-326, 2026 WL 313469, at *7–8 (E.D. Va. Feb. 5, 2026) (unpublished); Clack, 2024 WL 4954305, at *5; United States v. Gross, No. 1:17-CR-37, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024) (unpublished); United States v. Graff, No. 1:17-CR-20,

2024 WL 3912947, at *2 (W.D. Va. Aug. 23, 2024) (unpublished); United States v. Taylor, No. CR 06-699-3, 2024 WL 3594315, at *6 (D.N.J. July 31, 2024); Delavan, 2024 WL 2958956, at *4; United States v. Milchin, No. 17-284-1, 2023 WL 7544995, at *1 (E.D. Pa. Nov. 13, 2023) (unpublished); United States v. Conrad, No. 20-22, 2023 WL 7301225, at *2 (D. Mont. Nov. 6, 2023) (unpublished). Thus, reducing Foster's sentence would not comport with section 1B1.13(b)(3)(C)–(D). See, e.g., Blevins 2026 WL 497306, at *2.

Next, Foster argues that a sentencing disparity exists between prisoners eligible for compassionate release under the section 3582(c)(1)(A) and those eligible for halfway house placement and home confinement under the Second Chance Act of 2006. See 18 U.S.C. 3582(c)(1)(A); Pub. L. No. 110-199, § 251, 122 Stat. 657 (2008) (codified as amended at 18 U.S.C. § 3624); [D.E. 87] 12–15. The policy statement, however, states that a sentencing disparity only arises "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of that sentence." U.S.S.G. § 1B1.13(b)(6). In that case, "a change in the law . . . may be considered in determining whether defendant presents an extraordinary or compelling reason" when "such change would produce a gross disparity" between defendant's sentence and the one likely to be imposed. Id.

On September 28, 2022, the court sentenced Foster to 132 months imprisonment. See [D.E. 82, 83]. Foster has not yet served ten years of his sentence. Therefore, Foster's alleged sentence disparity is not an extraordinary and compelling factor under Section 1B1.13(b)(6). See, e.g., United States v. Crawley, 140 F.4th 165, 172–73 (4th Cir. 2025); United States v. Powell, No. 5:17-CR-169, 2024 WL 4778029, at *3 (E.D.N.C. Nov. 13, 2024) (unpublished); United States v. Flake, No. 1:19-CR-508, 2025 WL 3496565 at *2 (M.D.N.C. Dec. 5, 2025) (unpublished); United States v. Morton, No.: 3:15-801, 2025 WL 1951875 at *3 (D. S.C. July 16,

2025) (unpublished). Thus, releasing Foster due to this alleged sentencing disparity would not comport with section 1B1.13(b)(6).

As for Foster's Covid-19 claim, Foster alleges that he continues to experience "breathlessness and [an] unexplained racing heart" due to his previous Covid-19 infection. [D.E. 87] 19. The "medical circumstances of the defendant" policy statement provides, in relevant part, that a defendant's medical conditions may constitute extraordinary and compelling reasons if he is "suffering from a medical condition that requires long-term or specialized medical care that is not provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). The policy statement also permits the finding of extraordinary and compelling circumstances for an infectious disease if the defendant can show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G § 1B1.13(b)(1)(D).

Foster provides some medical records. See [D.E. 95]. Those records indicate that Foster only suffers from one current medical problem—heartburn. See id. at 15. Foster does not provide any information that he is at risk of serious deterioration in health or death due to either his heartburn or other alleged symptoms. See [D.E. 94] 16. Moreover, Foster does not show that he is at an increased risk of suffering severe medical complications or that there is an ongoing risk of Covid-19 at FCI Bennettsville. See id. at 17. Foster's concern about Covid-19 itself is not

sufficient to merit compassionate release. See, e.g., United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); Kelly v. United States, 789 F. Supp. 3d 434, 444 (E.D. Va. 2025). Thus, Foster's medical circumstances do not merit compassionate release under section 1B1.13(b)(1)(C–D).

As for the "other reasons" policy statement, Foster argues that his rehabilitation, FCI Bennettsville's Covid-19 harsh restrictions, his release plan, and cumulative factors merit compassionate release. See [D.E. 87] 18–25. The court will consider the release plan and cumulative factors under section 3553(a).

As for Foster's nature-of-incarceration claim, Foster argues that FCI Bennettsville's Covid-19 policies canceled "rehabilitative programs," limited "educational opportunities" and that he was kept "in the functional equivalent of solitary confinement or lockdowns" that were an "excruciating experience not contemplated at sentencing" Id. at 19. Foster's arguments fail because "if challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." United States v. Laporte, No. 4:19-CR-8, 2024 WL 4800192, at *4 (E.D. Va. Nov. 15, 2024) (unpublished) (cleaned up), aff'd, No. 24-7154, 2025 WL 602774 (4th Cir. 2025) (per curiam) (unpublished), cert. denied, 146 S. Ct. 210 (2025); see United States v. Estrada, No. 1:06-CR-161, 2025 WL 2855123, at *3 (M.D.N.C. Oct. 8, 2025) (unpublished); Taylor v. United States, No. 4:19-CR-87, 2023 WL 1475072, at *3 (E.D. Va. Feb. 2, 2023) (unpublished). A circumstance which applies to every federal prisoner incarcerated during the pandemic is not an extraordinary and compelling reason for compassionate release. See, e.g., Rutherford, 146 S. Ct. at 1330. Thus, releasing Foster due to the nature of his incarceration does not comport with section 1B1.13(b)(5).

As for Foster's rehabilitation claim, Foster alleges that his "transformative and religious

awakening," completion of several adult learning courses, and his "perfect disciplinary record" warrant a sentence reduction. [D.E 87] 16–17; see [D.E. 87-3]. Rehabilitation alone is not an extraordinary and compelling reason to reduce a defendant's sentence. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9. Thus, releasing Foster due to his rehabilitation would not comport with section 994(t) or sentencing guideline 1B1.13(d).

Alternatively, even if Foster otherwise established extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b), the section 3553(a) factors, do not support reducing Foster's sentence. See Burleigh, 145 F.4th at 549–53; Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32. Foster is 35 years old and engaged in prolonged and serious criminal behavior. See PSR ¶ 12. From July 2013 to July 28, 2020, Foster was accountable for distributing or conspiring to distribute over 20 kilograms of fentanyl, 118 grams of actual methamphetamine, and 106 kilograms of methamphetamine. See id. Foster also fled from the police and rammed into a police officer's car, creating a substantial risk of death or serious injury for the police officer. See id. at ¶¶ 9, 12, 14.

When Foster engaged in his latest criminal conduct, he had a lengthy criminal history. See id. at ¶¶ 17–23. Foster had convictions for assault inflicting serious injury, larceny, injury to personal property, possession of marijuana, driving while impaired, assault with a deadly weapon on a government official, and eluding arrest with a motor vehicle with three or more aggravating factors. See id. Despite repeated leniency, Foster escalated his criminal behavior. See id.

The court has considered the entire record, the section 3553(a) factors, and the parties' arguments. The court has considered Foster's serious criminal conduct and violent criminal history and the need to punish Foster for his criminal behavior, to incapacitate Foster, to promote respect for the law, to deter others, and to protect society from Foster. The court also has

considered Foster's arguments about his alleged family circumstances, health issues, sentencing disparity, rehabilitation, release plan, prison conditions, and cumulative factors. See [D.E. 89] 5–25. Having considered the entire record, the court denies Foster's motions for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper v. United States, 562 U.S. 476, 480–81 (2011); Washington, 161 F.4th at 820–24; Burleigh, 145 F.4th at 549–53; United States v. Moody, 115 F.4th 304, 314–16 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Taylor, No. 22-6795, 2022 WL 17819301, at *1 (4th Cir. Dec. 20, 2022) (per curiam) (unpublished); United States v. Roane, 51 F.4th 541, 551–53 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Taylor, 337 F. App'x 342, 343–44 (4th Cir. 2009) (per curiam) (unpublished); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

Foster also seeks relief under Amendment 821 and contends that he should be a criminal history category IV, not V. See [D.E. 87] 11–12. Courts may not reduce a defendant's sentence under Amendment 821 if Amendment 821 "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). At sentencing, the court assigned Foster a criminal history of IV. See [D.E. 83]. Thus, Amendment 821 does not lower Foster's advisory guideline range. See id.; U.S.S.G. § 1B1.10(a)(2)(B). Accordingly, reducing Foster's sentence does not comport with U.S.S.G. § 1B1.10. See U.S.S.G. § 1B1.10(a)(2)(B); see, e.g., United States v. Surles, No. 5:19-CR-63, 2024 WL 1976548 at *6 (E.D.N.C. May 3, 2024) (unpublished); United

States v. Chapman, No. 2:19-CR-58, 2024 WL 474905, at *2 (S.D. W. Va. Feb. 7, 2024) (unpublished).

III.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 87].

SO ORDERED. This 29 day of September, 2026.

JAMES C. DEVER III
United States District Judge